FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

01 SEP 24  PM 2: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

GEORGE MCDANIEL,   )
          )
  Plaintiff,     )
          )
          )
  v.        )  CV- 99-B-3325-S
          )
FLANAGAN EXCAVATING CO., )
INC.,        )
          )
  Defendant.    )
          )

ENTERED

SEP 2 4 2001

## MEMORANDUM OPINION

Currently before the court is Defendant Flanagan's Excavating's ("Flanagan's Excavating" or "defendant") Motion for Summary Judgment. Defendant seeks summary judgment on Plaintiff George McDaniel's ("McDaniel" or "plaintiff") claims of discrimination in violation of 42 U.S.C. § 1981 and the Fair Labor Standards Act ("FLSA"). Plaintiff claims that because of his race he suffered pay discrimination, wrongful denial of promotion, and wrongful termination. Plaintiff also alleges claims of retaliatory discharge and disparate treatment.[1] Upon consideration of the record, submissions of the parties, argument of counsel, and relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.[2]

---

[1] On January 26, 2001, McDaniel filed a Motion to Dismiss Counts III and V (the retaliatory discharge and disparate treatment claims) of his complaint. In an order entered contemporaneously with this Memorandum Opinion and Order, the court denies plaintiff's Motion to Dismiss.

[2] The court is of the opinion that defendant's Motion for Summary Judgment on all counts contained in plaintiff's complaint, including Counts III and V, is due to be granted.

## I. FACTUAL SUMMARY

Flanagan's Excavating is a company engaged in the business of earth moving and grading for site preparation. Defendant hires four categories of employees, each with varying degrees of skill, training, and experience. These categories include administrative/office staff, truck drivers, heavy equipment operators, and laborers. Flanagan's Excavating hired George McDaniel as a laborer on August 6, 1998.[3] McDaniel operated a roller.[4] Defendant paid McDaniel $8.00 per hour when he started working with the company in August 1998 and increased his pay to $9.00 per hour sometime before his termination in September 1998.

Clearing land for Flanagan's Excavating's job sites sometimes involved the removal of trees. Companies, not associated with Flanagan's Excavating, would acquire rights to the timber. Defendant's employees, including McDaniel, Charles Shaw, David Light, Mike Blackmon, and Ralph Parker, have assisted the timber men in removing logs and trees from the land. Sometimes the timber man would give money to Ricky Martin ("Martin") with instructions to distribute the money between those members of defendant's crew who helped clear the sites or load logs for them. The timber man specified who should be paid and how much, and Martin delivered the money and distributed it according to the timber man's instructions. On one occasion McDaniel

---

[3] McDaniel was originally hired by Flanagan's Excavating on September 3, 1997, and worked until December 23, 1997, when he failed to show up for work. McDaniel was rehired on August 6, 1998. All of McDaniel's claims arise out of his second employment beginning August 6, 1998, and ending September 16, 1999.

[4] A roller is a piece of equipment with large metal cylinders that is used to compact soil. This piece of equipment has only two gears, forward and reverse, and is distinguished from "heavy equipment," which has numerous controls for the various functions of the machine. Flanagan's Excavating distinguishes between laborers who can operate a simple machine such as a roller and heavy equipment operators who have the skills to operate the more complex machinery.

received money.  On another occasion, he did not.   McDaniel contends that Martin did not give Parker or McDaniel, the two black members of his crew, a portion of the proceeds, but that he divided the money among the white employees.  According to defendant, McDaniel was paid when he actually assisted in the removal of the trees but was not paid when he did not help.  Defendant's employees were paid by the company for their hours when they assisted in the removal of trees.

McDaniel alleges that he sometimes worked overtime for defendant, but that defendant did not pay him for some of that overtime.  McDaniel cannot specify the weeks in which he was not properly paid or how many hours for which he did not receive compensation, but he asserts a two to three month period at the end of his employment that did not properly reflect the amount of overtime he worked.  McDaniel did not tell Gill Bentley, who was in charge of payroll, that his checks were not correct.  McDaniel submits that defendant's payroll records are not accurate and that white employees were properly paid for their overtime.

Rain and wet conditions affected the work of Flanagan's Excavating.  Some of the machines utilized by defendant cannot be operated on wet or rainy days; a roller is such a machine.  One of the duties that can be performed on rainy days is repairing silt fences.[5]  On rainy days, employees are often sent home or told not to report to work.  Laborers, with their limited skills, are often the first people sent home during inclement weather.  McDaniel alleges that he was forced to work less than his white co-workers, including Bobby Byars, Mike Blackmon, and Charles Shaw, during wet weather.  Workers are not paid for days they don't work.

---

[5]  Repairing silt fences involves driving poles, hanging wire, and drilling fabric.

3

McDaniel claims that during his employment with defendant a position for a "bulldozer operator" came available. Defendant submits that the position to which McDaniel is referring is likely that of "heavy equipment operator." McDaniel claims that he was more qualified than Bobby Byars, the person defendant hired for the position. Before Byars was hired, Mike Flanagan, Jr.,[6] had observed Byars's work at other job sites. Byars had experience on heavy equipment, could read plans, lay out a job, and set up instrument levels. Flanagan hired Byars because he thought Byars could do just about anything. Although McDaniel's supervisor, Ricky Martin, considered McDaniel for the job, Martin decided to give the position to Byars because of his experience. Like Flanagan, Martin had observed Byars's work and was satisfied that Byars knew how to operate the equipment. Martin had also seen McDaniel attempt to operate a bulldozer, but Martin observed that McDaniel let the machine "get away" from him and that McDaniel had no control over the bulldozer. McDaniel admits that prior to working for defendant, he had never operated a bulldozer.

Shortly after Flanagan became owner and president of the company, he realized that absenteeism was a problem for the company. He organized a company-wide breakfast, which was free to the employees and they were paid for their time. At the breakfast he talked to employees about the problems absenteeism caused and told them that the company would not tolerate unexcused absences. Within one week of the meeting, Flanagan received a call from a general contractor regarding a job that was behind because Martin was not properly supervising the job and was, instead, operating a roller. Flanagan drove to the site and asked Martin why he, rather than McDaniel, was operating the roller. Martin told Flanagan that McDaniel had not

---

[6] Mike Flanagan purchased Flanagan's Excavating in August 1999.

4

shown up for work and did not call to inform Martin that he would not be at work. Flanagan was aware of several other absences by McDaniel prior to this occasion. He told Martin that if McDaniel had another unexcused absence, he would be terminated.

On September 15, 1999, Martin told Flanagan that McDaniel had again not reported for work. Flanagan told Martin that McDaniel was terminated and that when McDaniel reported for work to send him to Flanagan's office. McDaniel reported to work the next day, September 16, 1999. Martin told McDaniel that he was fired and sent him to see Flanagan. Before McDaniel arrived at Flanagan's office, Martin told Flanagan that McDaniel had been absent a total of twenty days. A termination notice signed by Martin and dated September 16, 1999, states that plaintiff "[d]id not show up or call in on [certain] days." Martin noted that "some of these days he had told me he was going to be off but a majority he did not." McDaniel disputes that he was absent for twenty days. Flanagan determined the number of absences to be excessive, especially in light of his recent admonition regarding absenteeism. The termination notice signed by Flanagan and dated September 16, 1999, indicates that McDaniel was terminated because he "[d]id not report for work on 9-15-99" and "[d]id not call in or provide excuse for absence." McDaniel contends that he obtained permission from Martin to be off work on September 15, 1999.

McDaniel also complains that Martin used a derogatory tone with him and cursed at him during his employment.[7] Martin admits that he may have yelled at McDaniel as he probably has yelled at every other employee. Larry Walker, a heavy equipment operator, stated that Martin regularly yelled at all employees when he "got excited," especially at the truck drivers. Charles

---

[7] This allegation forms the basis for plaintiff's claim for disparate treatment in Count III of Complaint. Plaintiff ultimately moved to dismiss this claim and did not address it in his brief.

Shaw stated that all of the workers talked to each other "pretty rough" and that Martin did not treat McDaniel differently from white employees.

McDaniel also submits that he was terminated because of his alleged involvement in an EEOC claim filed by a former Flanagan's Excavating employee, Stacy Boykin.[8]  McDaniel states that he was not involved in the claim and that when Martin asked him if he was involved, he told Martin that he was not.  McDaniel does not allege that Flanagan knew anything about McDaniel's alleged involvement in the EEOC claim or that it was a factor Flanagan considered when he decided to terminate McDaniel.  McDaniel has never heard Flanagan make a racist comment.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure Rule 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the role of the court is not to "weigh the

---

[8]  This allegation forms the basis for plaintiff's claim for retaliatory discharge in Count V of Complaint.  Plaintiff ultimately moved to dismiss this claim and did not address it in his brief.

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to

be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  The

nonmovant need not be given the benefit of every inference but only of every *reasonable*

inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

### A.    Fair Labor Standards Act ("FLSA") Claim

McDaniel claims that Flanagan's Excavating violated the FLSA by denying plaintiff pay

for overtime hours he worked.  Because McDaniel has not presented sufficient evidence to create

a genuine issue of material fact that he was not paid for overtime that he worked, summary

judgment is to due to be granted.

The FLSA requires employers to pay its employees a minimum wage and to compensate

employees for overtime work. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 930 (11th Cir.

2000).  The FLSA requires employers to pay employees one and one-half times their regular rate

of pay for hours worked in excess of forty hours per week. *Id.*  The employee has the burden of

proving that he performed the work for which he was not properly compensated. *Olson v.

Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1578 (11th Cir. 1985).  When the employer "has

kept proper and accurate records the employee may easily discharge his burden by securing the

production of those records." *Id.*  However, when the employer's records are inaccurate or

inadequate, the employee may meet his burden by producing "sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference." *Id.*  If the

employee meets his burden, the burden then shifts to the employer to come forward with

7

evidence to rebut the reasonableness of the inference to be drawn from the employee's evidence. *Id.*

McDaniel admits that he was paid for some of the overtime he worked as reflected on Flanagan's Excavating payroll records. But he contends that defendant's payroll records do not accurately reflect all of the overtime he worked. According to plaintiff, Martin, who completed and submitted time cards for the employees, did not submit the correct number of hours plaintiff worked. McDaniel contends that he complained to Martin about his paychecks but that his paychecks reflected the correct amount only after he complained to a co-worker, Charles Shaw. Plaintiff contends that as a matter of "just and reasonable inference" he has shown that he was not properly paid overtime pay for two to three months of his employment with defendant. The court disagrees.

McDaniel has failed to present "sufficient evidence to show the amount and extent of that [overtime] work [of which he complains] as a matter of just and reasonable inference." *See Olson*, 765 F.2d at 1578. McDaniel cannot identify the weeks in which he was not paid, how many weeks he was not paid, and he cannot even estimate how many hours for which he was not paid. Plaintiff did not keep any records of the hours he worked for which he was not paid or of the checks that he claims were inaccurate. Plaintiff only offers the conclusory allegations in his complaint and brief. Plaintiff's uncertainty about the hours is manifested in his deposition statement that he can count and he knows that the check did not reflect the correct amount of pay. Plaintiff's vague assertions are not sufficient to defeat summary judgment because they do not designate "specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). Defendant is entitled to summary judgment on plaintiff's FLSA claim.

8

**B.      § 1981 Claims**

McDaniel brings this action pursuant to 42 U.S.C. § 1981.  He alleges that he was treated

less favorably than similarly situated white employees with respect to his pay, that he was

wrongfully denied a promotion because of his race, and that he was wrongfully terminated on the

basis of his race.  Section 1981 as amended by the Civil Rights Act of 1991 guarantees to all

persons in the United States "the same right . . . to make and enforce contracts, . . . and to the full

and equal benefit of all laws and proceedings for the security of persons and property as is

enjoyed by white citizens."  42 U.S.C. § 1981.  Section 1981 liability must be founded on

purposeful discrimination.  *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999) (citing

*General Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 389 (1982)).  Although the statutory

language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the

burdens of proof and the analysis for determining whether a defendant employer unlawfully

discriminated against an employee are the same.  *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057,

1060 (11th Cir. 1994).  *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.

1998).

Before the court proceeds with the analysis of McDaniel's claims under § 1981, the court

must address a preliminary contention by defendant.  Defendant submits that an at-will employee

such as McDaniel has no contractual relationship with his employer and, therefore, cannot

maintain a claim under § 1981. The Eleventh Circuit has not squarely addressed the issue but has

noted that in *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), "the Court found that

Patterson, who appears to be an at-will employee, fell within § 1981's protection." *Bishop v.

Avera*, 177 F.3d 1233, 1234, 1236 n.6 (11th Cir. 1999). Other courts have adopted the theory that

at-will employees have no contract and, thus, they have no rights under §1981. *Moorer v.*

9

*Grumman Aerospace Corp.*, 964 F. Supp. 665 (E.D.N.Y. 1997); *Moscowitz v. Brown*, 850 F.

Supp. 1185 (S.D.N.Y. 1994). *See also Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025,

1029-31 (7th Cir. 1998). This court disagrees and finds the Fifth Circuit's position compelling:

"To hold that at-will employees have no right of action under § 1981 would effectively

eviscerate the very protection that Congress expressly intended to install for minority employees,

especially those who, by virtue of working for small businesses, are not protected by Title VII."

*Fadeyi v. Planned Parenthood Assoc. of Lubbock*, 160 F.3d 1048, 1050 (5th Cir. 1998). *See also*

*Faulk v. Home Oil Co., Inc.*, 184 F.R.D. 645, 652-653 (M.D.Ala. 1999). Defendant's contention

that McDaniel cannot maintain a claim under § 1981 because he is an at-will employee is without

merit.

McDaniel can prove his § 1981 claim through the introduction of direct or circumstantial

evidence. In this case there is no direct evidence of discrimination. Therefore, the court's

analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community*

*Affairs v. Burdine*, 450 U.S. 248 (1981). *See Standard*, 161 F.3d at 1330; *Turnes*, 36 F.3d at

1060. Under this framework, the plaintiff bears the initial burden of establishing a prima facie

case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima

facie case, the burden of production shifts to the defendant "to articulate a legitimate,

nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If

defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's

articulated reasons are a mere pretext for unlawful motives, in this case, race discrimination or

retaliation. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on

the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

  *(1) Discrimination in Compensation and Hours of Employment[9]*

  McDaniel claims that he was treated less favorably than similarly situated white employees with respect to his pay and hours worked. McDaniel contends that he was not paid for his assistance in removing trees from job sites, he was not paid for overtime hours that he worked, and he was not given the opportunity to work in inclement weather and, therefore, could not be paid for that time. To establish a prima facie case of race discrimination in compensation and hours of employment, plaintiff must prove that (1) he is a member of a protected group; (2) he asked for and was qualified for the employment condition or benefit; (3) despite his qualifications he was denied the condition or benefit; and (4) at the time he was denied the condition or benefit, other similarly situated employees were given the benefit. *Thompson v. Morris Brown College*, 752 F.2d 558, 562 (11th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802-03). While plaintiff, an African-American, is clearly within a protected class, the court finds that plaintiff has failed to establish a prima facie case as to any of his three claims. Specifically, plaintiff offers no evidence that he was similarly situated to persons outside the class who were compensated for removing trees and who were called upon to work during inclement weather. Regarding the discrimination in overtime pay claim, plaintiff has not

---

  [9] Plaintiff asserts in his Response to Defendant's First Set of Interrogatories that he suffered pay discrimination because his hourly wage was less than similarly situated white employees. This allegation was not pleaded in the Complaint, was not argued in plaintiff's Response to Defendant's Motion for Summary Judgment, and is not before the court.

demonstrated a genuine issue of material fact that he was denied pay for hours that he worked.

To make the comparison that defendant treated similarly situated employees outside his protected class more favorably than himself, McDaniel must demonstrate that he and the employees to which he refers are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). To determine whether employees are similarly situated for purposes of establishing a prima facie case, the court must consider whether the employees are engaged in the same or similar activity and are treated in a different way. *Id.* If a plaintiff fails to show that he is similarly situated in all relevant respects to the non-minority comparators, summary judgment is appropriate unless other evidence of discrimination is present. *Id.*

a.     Discrimination in Compensation

McDaniel claims that defendant paid white employees for their assistance to timber men in removing trees and logs from job sites but failed to pay black employees such as himself for the same work. The court finds that McDaniel has not presented sufficient evidence to establish a prima facie case of pay discrimination because he was not similarly situated to those employees who were paid.

McDaniel alleges that several members of Martin's crew, including plaintiff, Charles Shaw, David Light, Mike Blackmon, and Ralph Parker, have assisted timber men in removing logs and trees from job sites. McDaniel remembers two occasions where this practice allegedly occurred, and he admits that on one of these occasions, the proceeds were distributed to him by Martin. According to plaintiff, on one other occasion during his employment, he and others assisted in such removal, and the timber man gave defendant money for the assistance. Plaintiff contends that Martin distributed the money only among the white men in the crew. According to

12

Flanagan, McDaniel was not paid by the timber men on the one occasion because he did not assist in the loading of trees.

McDaniel has offered no evidence that he assisted in the tree removal process on the occasion he claims he did not get paid for his assistance. The other employees who McDaniel says received payment did assist in the tree removal. McDaniel has offered no evidence that he was similarly situated to the other employees who received payment and, therefore, has not established a prima facie case of discrimination.

Even if McDaniel is similarly situated to the employees he claims received more favorable treatment, he has not rebutted defendant's proffered reason for denying him payment. Defendant proffered that companies not associated with Flanagan's Excavating often acquired rights to timber at a site and gave money to Martin to distribute among defendant's crew who helped to clear the land and load trees for them. The money defendant's employees received for assisting in the tree removal came from the timber men. By McDaniel's own admission, on the occasion when he was not paid he knew that the money from the tree removal did not come from Flanagan's Excavating. The timber men determined who from defendant's crew should be paid, and they, rather than Flanagan, chose not to include McDaniel because he did not assist them in the removal. McDaniel has offered no evidence that the legitimate, non-discriminatory reasons proffered by plaintiff for not distributing money from the timber men for assistance in loading and removing trees from the job site is pretext for discrimination. There is no genuine issue of material fact, and the defendant is entitled to summary judgment on the claim.

        b.      Discrimination in Hours of Employment

McDaniel claims that defendant allowed white employees to work during inclement weather but sent him home, reducing the number of hours for which he could be paid. The court

finds that McDaniel has not presented sufficient evidence to establish a prima facie case on his discrimination in hours of employment claim because he was not similarly situated to those employees who were called upon to work during inclement weather.

McDaniel claims that he and Ralph Parker, another African-American employee, were sent home during inclement weather, while Charles Shaw, Mike Blackmon, Bobby Byars, and David Light were allowed to stay and work. Ralph Parker stated that McDaniel has worked during rainy weather. This assertion is consistent with defendant's position that McDaniel was allowed to work when he was needed. McDaniel was a laborer whose primary job was to operate a roller. The roller cannot be used when the ground is wet. McDaniel knows how to repair silt fences, but silt fences aren't in need of repair every time it rains. The other employees that McDaniel contends were treated more favorably because they are allowed to work when he is sent home are not similarly situated. They are qualified to operate machines that can be used during wet weather and they can perform other tasks that aren't hindered by rain. Charles Shaw was a heavy equipment operator with more than twenty years of experience. Mike Blackmon was a leadman/heavy equipment operator who could run jobs by himself. He could read engineering drawings and determine what work was necessary to complete the job. He could operate a level and shoot grade, and he was in line to be a grading foreman. David Light was a heavy equipment operator who could run a level. Bobby Byars was a heavy equipment operator who knew how to form concrete and operate a level. McDaniel, a laborer who operates a roller, is not similarly situated to any of these employees with respect to his experience and skill. Plaintiff is not able to identify a time when a person with his same skills was permitted to work and he was sent home. Because McDaniel has not demonstrated that he is similarly situated to white employees that he claims were treated more favorably, his prima facie case fails.

14

Even if the court found that McDaniel was similarly situated, he fails to meet his burden that defendant's proffered reason for not calling upon plaintiff to work during inclement weather is pretext for discrimination. Defendant asserts that it did not allow McDaniel to work when there was no work for which he was qualified or when one of the more experienced employees could complete the "fill-in" jobs in addition to their other tasks. McDaniel has offered no evidence to support a finding that this reason was a pretext for discrimination. Summary judgment is due to be granted.

      c.     Discrimination in Overtime Pay

McDaniel claims that defendant did not pay him for all the overtime hours he worked during a two to three month period of his employment. McDaniel contends that Flanagan's Excavating's payroll records are not accurate and that the company paid white employees for all of their overtime. McDaniel has not presented sufficient evidence to establish a prima facie case because he failed to demonstrate a genuine issue of material fact that he was denied pay for hours that he worked.

Although plaintiff claims that he has demonstrated that defendant's payroll records are inaccurate and that he was not paid for some of the overtime that he worked, he offers no evidence to support his claim. McDaniel kept no record of how many overtime hours he worked and for which he did not get paid. He cannot identify what period of time defendant failed to pay him or for how many hours. McDaniel only offers the conclusory allegation that he knows his check didn't accurately reflect the number of overtime hours he worked. According to the payroll evidence of record, McDaniel was compensated for all the overtime hours he worked. Because McDaniel fails to offer substantial evidence that he was not paid for hours worked, his prima facie case fails.

15

(2)     *Wrongful Denial of Promotion*

McDaniel alleges that defendant discriminated against him on the basis of race by denying him a promotion. The court finds that McDaniel cannot establish a prima facie case of discrimination on his failure to promote claim.

To establish a prima facie case of failure to promote based on discrimination, a plaintiff must prove (1) that he is a member of a protected class; (2) that he was qualified for and applied for the position; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001) (citing *Combs*, 106 F.3d at 1539). Once the plaintiff establishes these elements, the defendant has the burden of producing a legitimate, non-discriminatory reason for its action. *Id.* If such a reason is produced, plaintiff must then demonstrate that the proffered reason is pretextual. *Id.*

It is undisputed that plaintiff is a member of a protected class. It is also undisputed that he applied for the position of heavy equipment operator by informing his supervisor of his interest in the position. However, plaintiff has not presented substantial evidence that he was qualified for the heavy equipment operator job. McDaniel admits that he had no experience running heavy equipment or a bulldozer prior to working for defendant. Plaintiff was a laborer who operated a roller. Heavy equipment such as a bulldozer required a higher level of experience or skill than is required for a laborer position. When Martin observed McDaniel on a bulldozer, he saw the machine "get away" from him, meaning that McDaniel could not control the equipment. Martin also observed Byars operate a bulldozer. He was satisfied that, unlike McDaniel, Byars "knew what he was doing" on the machine. Byars could perform many tasks other than operating a bulldozer. He could run a bobcat, run a rubber tire backhoe, run a roller,

16

and repair a silt fence. Byars could also lay out jobs, shoot grades, set blue tops, and shovel mud. Byars had skills and experience which McDaniel doesn't even claim to have. Because McDaniel has not offered substantial evidence that he possessed the minimum qualifications for the job of heavy equipment operator, his prima facie case fails.

Even if plaintiff could establish a prima facie case, defendant has articulated a legitimate, non-discriminatory reason for not hiring McDaniel. Defendant asserts that he did not hire McDaniel because Martin, plaintiff's supervisor, thought plaintiff was not qualified to do the job. An employer may refuse to promote an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 2000). The court does not ask "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney*, 247 F.3d at 1188. Martin was dissatisfied with McDaniel's operation of a bulldozer. Martin was satisfied that Byars could adequately operate the machine and perform many other tasks, many of which McDaniel doesn't claim to know how to do. Martin found Byars to be more qualified for the heavy equipment operator position. McDaniel has not established that defendant's proffered reason for not choosing him to fill the heavy equipment operator position is pretextual, and his claim fails. Summary judgment is due to be granted on plaintiff's failure to promote claim.

   *(3)    Wrongful Termination*

McDaniel also alleges that his termination on September 16, 1999, was based on his race. However, McDaniel has not established a prima facie case of wrongful termination based on discrimination.

17

To prove that he was wrongfully terminated on the basis of his race, McDaniel must prove that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was discharged; and (4) that his former position was filled by an individual outside his protected class or that similarly situated individuals outside his protected class were retained. *Wright v. Southland Corp.*, 187 F.3d 1287, 1291 (11th Cir. 1999); *Lincoln v. Board of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 937 (11th Cir. 1983); *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982). If McDaniel establishes a prima facie case, an inference of discrimination arises, and the burden shifts to defendant to produce a legitimate, non-discriminatory reason for plaintiff's termination. *Wright*, 187 F.3d at 1291. To survive summary judgment, plaintiff must then present sufficient evidence such that a reasonable trier of fact could find that defendant's proffered reason is a pretext for discrimination. *Id.*

It is undisputed that McDaniel is in a protected class. It is undisputed that McDaniel was qualified for the position of laborer, which he held at the time of his termination. It is undisputed that McDaniel was terminated. However, McDaniel has not offered any evidence that after he was terminated, defendant filled his previous position with someone outside of his protected class. Furthermore McDaniel has not offered evidence that a similarly situated individual outside his protected class was retained. He offers the conclusory statement that none of the employees supervised by Martin are African-American without offering any evidence that those individuals were similarly situated to him in all relevant respects and were retained when he was not. Because plaintiff has not set forth evidence to support the elements of his claim, the prima facie case fails.

Even if the court found that plaintiff had established a prima facie case of discriminatory discharge, plaintiff has not demonstrated with sufficient evidence to create a genuine issue of

18

material fact that defendant's reason for discharging him is pretext for discrimination. Flanagan proffered a legitimate, non-discriminatory reason for terminating McDaniel. Flanagan fired McDaniel because McDaniel failed to report to work without an excuse after Flanagan had warned his employees that he would no longer tolerate unexcused absences. Absenteeism had a become a problem for Flanagan's business, and he took steps to alleviate the problem. Within a week following Flanagan's admonition about absenteeism, McDaniel failed to report for work. After receiving a complaint that the site wasn't being properly supervised, Flanagan arrived at the job site to find Martin operating a roller, which was McDaniel's job, because McDaniel failed to report to work and failed to notify defendant that he would not be there. Flanagan gave Martin instructions that if McDaniel had another unexcused absence, he would be fired. On the day before McDaniel was terminated, he again failed to report to work. Martin alerted Flanagan, and Flanagan told Martin that McDaniel was terminated and that McDaniel should be sent to see Flanagan when he reported. The following day McDaniel reported to work. Martin told him he was fired and sent him to see Flanagan. Flanagan terminated McDaniel because he failed to report to work without excuse.

"Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions . . . .'" *Chapman v. A.I. Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). The court reiterates that an employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 2000). Here, the proffered reason clearly meets the test of being one that might motivate a reasonable employer. Flanagan warned his employees that absenteeism would not be tolerated. McDaniel

19

filed a motion to dismiss those claims.[10]   The Federal Rules of Civil Procedure provide in

pertinent part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

As noted, plaintiff did not file any evidence in opposition to defendant's Motion for

Summary Judgment on the claims alleged in Counts III and V of Complaint.  Based on the

evidence filed by the defendant and the argument in its brief, the court concludes that defendant

is entitled to judgment as a matter of law on the retaliatory discharge and disparate treatment

claims.

## IV.  CONCLUSION

After a careful review of all the evidence, the court concludes that no genuine issues of

material fact exist herein and defendant is entitled to judgment as a matter of law on all claims

asserted by the plaintiff.  An Order granting defendant's Motion for Summary Judgment will

entered contemporaneously with this Opinion.

DONE this __24th__ day of September, 2001.

Sharon Lovelace Blackburn

SHARON LOVELACE BLACKBURN
United States District Judge

---

[10] On January 26, 2001, McDaniel filed a Motion to Dismiss Counts III and V (the
retaliatory discharge and disparate treatment claims) of his complaint.  In an order entered
contemporaneously with this Memorandum Opinion and Order, the court denies plaintiff's
Motion to Dismiss.

21

failed to report to work on two occasions after Flanagan's admonition.  McDaniel has presented

no evidence that Flanagan treated McDaniel differently than another employee who failed to

report work without excuse on two occasions.

McDaniel submits that he had received permission from Martin to be off work on

September 15, 1999.  At his deposition, Martin could not remember if he had given plaintiff

permission to be off work that day.  However, Martin provided Flanagan a list of twenty days

that McDaniel failed to report to work.  Although he couldn't pinpoint which days were excused

and which were not, Flanagan believed that McDaniel had missed an excessive number of days

of work without prior approval.  McDaniel disputes that he had twenty unexcused absences.

Flanagan believed that plaintiff missed an excessive number of days.  In any event, McDaniel

failed to report to work on September 15, 1999.  Flanagan believed that the absence was

unexcused.  "The law is clear that, even if a [§ 1981] claimant did not in fact commit the

violation with which he is charged, an employer successfully rebuts any prima facie case of

[discrimination] by showing that it honestly believed the employee committed the violation."

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).  In an attempt to cure his absenteeism

problem, Flanagan fired McDaniel because he believed McDaniel had been absent with excuse.

McDaniel has not presented sufficient evidence that defendant's proffered reason is pretextual,

and summary judgment should be granted.

### (4)    *Retaliatory Discharge and Disparate Treatment*

Plaintiff did not file any evidence in opposition to defendant's Motion for Summary

Judgment on the retaliatory discharge and disparate treatment claims alleged in Counts III and V

of Complaint.   Plaintiff notes in his brief that he does not address these claims because he had